**LEILA W. MORGAN**
California Bar No. 232874
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Leila_Morgan@fd.org

Attorneys for Ms. Buenrostro-Villaruel

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JANIS L. SAMMARTINO)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 07CR3158-JLS |
| Plaintiff, | DATE: December 21, 2007 |
| | TIME: 9:00 a.m. |
| v. | |
| LUZ MARIA BUENROSTRO-VILLARUEL, | STATEMENT OF FACTS AND |
| | MEMORANDUM OF POINTS AND |
| | AUTHORITIES IN SUPPORT OF MOTIONS |
| Defendant. | |

**I.**

**STATEMENT OF FACTS[1]**

Ms. Buenrsotro-Villareal entered the United States as a Lawful Permanent Resident on January 13, 1962. At the time of her admission to the United States, Ms. Buenrostro-Villareal was one year old. Her parents, both of whom were Legal Permanent Residents, sponsored her admission to the United States. Ms. Buenrostro-Villareal resided in the United States from the time of her admission until she was deported on August 21, 2006.

Ms. Buenrostro-Villareal attended elementary, middle and high school in the United States. She

---

1. The following is based primarily upon information supplied through Government discovery. Ms. Buenrostro-Villaruel does not stipulate to its accuracy and reserves the right to challenge it at future proceedings.

eventually married, bought a home and had a child. Her parents, until the time of their deaths also resided in the United States. Ms. Buentrostro-Villareal also has siblings, nieces and nephews that are United States citizens.

On August 2, 2006, Ms. Buenrostro-Villareal was served with a notice to appear for removal proceedings. The Immigration and Naturalization Service alleged that:

1) Ms. Buenrostro-Villareal was not a citizen or national of the United States;

2) Ms. Buenrostro-Villareal was a native and citizen of Mexico;

3) Ms. Buenrostro-Villareal was admitted to the United States at San Ysidro, California on or about January 13, 1962 as a lawful permanent resident; and

4) Ms. Buenrostro-Villareal was on October 12, 2005, convicted in the Superior Court of California, in and for the County of Imperial, for the offense of transportation of a controlled substance in violation of Section 11352(a) of the California Health and Safety Code for which the term of imprisonment was three years.

The INS further alleged that Ms. Buenrostro was subject to removal from the United States pursuant to Section 237(a)(2)(B)(i) of the Immigration and Nationality Act, because after her admission to the United States she was convicted of a violation of any law or regulation of a State relating to a controlled substance.

On August 21, 2006, Ms. Buentrostro-Villareal appeared before an Immigration Judge in San Francisco, California. During the proceeding Ms. Buenrostro-Villareal admitted the allegations in the Notice to Appear and was ordered deported.

The immigration proceeding lasted less than ten minutes. The immigration judge stated to Ms. Buenrostro-Villareal that she would be waiving her right to appeal the immigration judge's order and that she was waiving her right to have an attorney assist her with the proceedings. The immigration judge at no time explained any potential forms of relief available to Ms. Buenrostro-Villareal, nor inquired about her desire to apply for potential forms of relief. The immigration judge indicated that Ms. Buenrostro-Villareal was admitted as a lawful permanent resident in January of 1962. After Ms. Buenrostro-Villareal admitted that she was a Mexican citizen, had been admitted for lawful permanent residence in 1962, and was convicted of transportation of a controlled substance in 2004, the Immigration Judge ordered her removed from the United States to Mexico.

The following is the entirety of the exchange between the Immigration Judge and Ms. Buenrostro during her immigration hearing:

1    IJ: This is the matter of Ms. Buenrostro 13066177

2    IJ: Appearing on behalf of the respondent pro bono is Mitchy Calvala and on behalf of the government is Ms. Colletta

3    IJ: Mrs. uhh Luz Maria, English ma'am is that correct

4    Ms. Buenrostro: Yes

5    IJ: Ma'am is it correct that you wish to return uh here it is.

6    IJ: Is it correct that you wish to return back to Mexico?

7    Ms. Buenrostro: Yes sir,

8    IJ: Do you have any fear of returning to Mexico?

9    Ms. Buenrostro: No sir

10    

11    IJ: Now, you understand today you will be waiving your right to have an attorney to help you. You understand that?

12    Ms. Buenrostro: Yes sir

13    IJ: And you are also going to be waving your right to appeal my decision to send you back to Mexico.

14    

15    Ms. Buenrsotro: Yes

16    IJ: And you understand that you will be permanently barred from ever returning back to the United States

17    Ms. Buenrostro: Yes sir.

18    IJ: And if you return illegally you can be arrested and prosecuted and if convicted sentenced to up to twenty years in prison do you understand that ma'am.

19    Ms. Buenrostro: Yes.

20    

21    IJ: Alright. Do you solemnly swear that the answers you give to my questions will be the truth.

22    Ms. Buenrostro: I swear

23    IJ: Please tell me your name.

24    Ms. Buenrostro: My full name is Luz Maria Buenrostro-Villareal

25    IJ: Now are you a citizen of the US?

26    Ms. Buenrostro: No sir

27    IJ: You are a citizen of Mexico

28    Ms. Buenrostro: That's correct

1   IJ: And you became a lawful permanent resident in January of 1962.

Ms. Buenrostro: According to my green card yes

IJ: And unfortunately on October 12, 2004, you were convicted of transportation and sale of a controlled substance heroin and sentenced to three years prison.

IJ: Ms. Collet are you satisfied.

Government Attorney: I am your honor.

IJ: Alright based upon the respondents admissions the court will find by clear and convincing evidence that the charges have been sustained. Therefore order respondent removed to Mexico based upon the charges in the Notice to Appear.

IJ: Ma'am you are ordered returned to Mexico.

On September 17, 2007, Ms. Buenrsotro-Villareal was found in the United States and arrested for a violation of 8 U.S.C. § 1326.

These motions follow.

**II.**

**THE INDICTMENT SHOULD BE DISMISSED BECAUSE MS. BUENROSTRO-VILLAREAL'S DUE PROCESS RIGHTS WERE VIOLATED AT HER IMMIGRATION HEARING**

The immigration judge presiding over Ms. Buenrostro's removal proceeding failed to obtain a knowing, voluntary and intelligent waiver of Ms. Buenrostro's appellate rights. In addition, the IJ erred by failing to inform Ms. Buenrostro about her eligibility for any form of relief from removal, because Ms. Buenrostro was eligible for cancellation of removal under 8 U.S.C. 1229b(a). The immigration judge's failure to advise Ms. Buenrostro of her eligibility for cancellation of removal, coupled with the insufficient explanation of her appellate rights violated Ms. Buenrostro's right to due process.

Ms. Buenrostro had been a legal permanent resident of the United States for more than forty years at the time of her removal proceeding in 2006. During that time Ms. Buenrostro had worked consistently, owned a home, had parents and a child who were United States citizens. Given her substantial ties to the United States, her length of residency and the fact that her 2004 conviction for transportation of a controlled substance was not an aggravated felony, it is more than plausible that Ms. Buenrostro would have been granted relief from deportation had she been allowed to apply.

1    Because Ms. Buenrostro's deportation hearing contained numerous violations of due process, and
2 because those violations caused Ms. Buenrostro unusually clear prejudice, the government may not rely on
3 Ms. Buenrostro's 2006 deportation in prosecuting her under 8 U.S.C. § 1326. Since there is no other
4 deportation the government may rely on in prosecuting her, Ms. Buenrostro moves this Court for an order
5 dismissing the indictment.

**A.    Ms. Buenrostro's Deportation Was Fundamentally Unfair, and She Was Prejudiced**

"In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998). A defendant charged with illegal reentry under section 1326 has a Fifth Amendment right to attack his removal order collaterally because the removal order is a predicate element of his conviction. United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987) ("Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding."). See also United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047-48 (9th Cir. 2004) (citing Zarate-Martinez and Mendoza-Lopez for these principles).

To successfully collaterally attack her deportation, Ms. Buenrostro must demonstrate that: 1) she exhausted all administrative remedies available to her to appeal her removal order; 2) the underlying removal proceedings at which the order was issued improperly deprived her of the opportunity for judicial review; and, 3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d); Ubaldo-Figueroa, 364 F.3d at 1048. "An underlying removal order is 'fundamentally unfair' if: '1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and 2) he suffered prejudice as a result of the defects.'" Ubaldo-Figueroa, 364 F.3d at 1048 (citing Zarate-Martinez, 113 F.3d at 1197) (brackets omitted).

Importantly, although Ms. Buenrostro carries the initial burden on the issue of prejudice, once Ms. Buenrostro makes a prima facie showing of prejudice, **"the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceedings' outcome."** United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir. 2003) (emphasis added). As explained below, Ms. Buenrostro can demonstrate each of the elements necessary for this Court to sustain his collateral attack.

### 1. Ms. Buenrostro Is Exempt From the Exhaustion Requirement

Ms. Buenrostro's appellate waiver was invalid, because, as discussed below, (1) the IJ's advisals regarding her appellate rights were inadequate; and (2) the IJ failed to inform Ms. Buenrostro of relief from deportation for which she was eligible. Accordingly, Ms. Buenrostro is exempt from the exhaustion requirement.

Had Ms. Buenrostro "validly waived the right to appeal [his removal order] during the deportation proceedings," he would be barred under 8 U.S.C. § 1326(d) from collaterally attacking her underlying removal order as a defense to the section 1326 charge. Ubaldo-Figueroa, 364 F.3d at 1048 (quoting United States v. Muro-Inclan, 249 F.3d 1180, 1182 (9th Cir. 2001)). However, the exhaustion and deprivation of judicial review requirements cannot bar collateral review when—as in this case—the waiver of the right to administrative appeal did not comport with due process. Id.

A waiver of the right to appeal a removal order does not comport with due process when it is not "considered and intelligent." Id. See also United States v. Pallares-Galan, 359 F.3d 1088, 1096 (9th Cir. 2004); United States v. Leon-Paz, 340 F.3d 1003, 1005 (9th Cir. 2003). As the Ninth Circuit held in Pallares-Galan:

> For a waiver to be valid, the government must establish by "clear and convincing evidence," Gete v. INS, 121 F.3d 1285, 1293 (9th Cir. 1997), *that the waiver is "considered and intelligent*." United States v. Lopez-Vasquez, 1 F.3d 751, 753-54 (9th Cir. 1993)(en banc); see also United States v. Gonzalez-Mendoza, 985 F.2d 1014, 1017 (9th Cir. 1993) (finding a due process violation where immigration judge failed to inquire whether right to appeal was knowingly and voluntarily waived).

Pallares-Galan, 359 F.3d at 1097 (emphasis added.). In this case, the government cannot establish by clear and convincing evidence that Ms. Buenrostro's appellate waiver was "considered and intelligent," because Ms. Buenrostro's waiver was based on inadequate and inaccurate advisals regarding her rights.

### 2. Ms. Buenrostro Was Deprived of Judicial Review

To sustain a collateral attack on her removal order, Ms. Buenrostro must also demonstrate that the deportation proceedings improperly deprived her of judicial review. 8 U.S.C. § 1326(d)(2). As explained above, Ms. Buenrostro was deprived of the opportunity for judicial review, because she did not make a considered and intelligent waiver of her right to appeal. She did not make a considered and intelligent waiver of her right to appeal because the IJ did not explain the right to her adequately, and failed to advise

her that she was eligible for relief from deportation. In Ubaldo-Figueroa, the Ninth Circuit found the "deprivation of judicial review" requirement met when an IJ failed to inform a petitioner of his right to appeal the deportation order. Ubaldo-Figueroa, 364 F.3d at 1050. Ms. Buenrostro was deprived of judicial review because of the IJ's inadequate advisals regarding appellate waiver and the IJ's failure to inform her of her eligibility for relief from deportation.

### 3. Ms. Buenrostro's Deportation Was Fundamentally Unfair
#### a. Ms. Buenrostro Was Denied Due Process

##### i) Ms. Buenrostro Was Inadequately Advised Regarding Her Appellate Waiver

The fact that the IJ never explained what an appeal was, and asked only that whether Ms. Buenrostro understood that her appellate rights were waived demonstrates that any purported waiver was not considered and intelligent. See, e.g., Zarate-Martinez, 133 F.3d 1194, 1198 (9th Cir. 1998) (holding that IJ's conversation with petitioner where IJ asked, "do you understand your rights?" and petitioner responded "yes," did not "qualify as an express or implied 'voluntary or intelligent' waiver of the right to appeal, even though IJ had previously informed the group that they would have the right to appeal) (overruled on other grounds in United States v. Ballesteros-Ruiz, 319 F.3d 1101, 1105 (9th Cir. 2003)); Pallares-Galan, 359 F.3d. at 1093, 1098 (no express or implied waiver where IJ asked alien if he wished to appeal and alien stated that "[i]t would be better if I leave my children, that's fine" (emphasis removed)); United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000) (finding due process violation in a section 1326 collateral appeal because IJ failed to tell the defendant about his eligibility for waiver of deportation); United States v. Arce-Aceves, 163 F.3d 559, 563 (9th Cir. 1998) (same); United States v. Lopez-Vasquez, 1 F.3d 751, 753 (9th Cir. 1993) (en banc) (alien's waiver was not "considered and intelligent" even though the IJ thoroughly explained the right to appeal at a group hearing because the IJ failed to solicit separate responses from each individual; fact that the petitioner knew what an appeal was "was insufficient"; the IJ's actions may have conveyed the message that the petitioners would not benefit from an appeal).

There is no indication that the immigration judge presiding over Ms. Buenrostro's hearing ever explained what Ms. Buenrostro's appellate rights were. He simply asked whether she understood that she was giving them up. There was no indication to Ms. Buenrostro that she had any choice in the matter as to whether she would be waiving them. The IJ simply asked whether she understood that the wavier was

happening, he did not seek her permission for the waiver. Nor, is there any indication that Ms. Buenrostro was informed what an appeal was, that she was entitled to file one if she did not waive and what the consequences of the waiver were.

Ms. Buenrostro's situation is on all fours with Zarate-Martinez, 133 F.3d at 1198, where the Ninth Circuit found that there was no valid waiver of the defendant's appellate right. In Zarate-Martinez, the IJ told a group of 22 people about the appellate process, then asked them if they understood their right to appeal. En masse, the group responded, "yes." Later on in the hearing, the judge asked Mr. Zarate-Martinez if he understood his rights. Mr. Zarate-Martinez responded in the affirmative. The Ninth Circuit held that these statements, combined, "do not qualify as an express or implied 'voluntary and intelligent' waiver of [the] right to appeal." Id. . Here, there is no indication that Ms. Buenrostro was ever informed that she could appeal, what an appeal was or understood that she did not have to waive her right to appeal. Rather, the immigration judge simply inquired whether she understood that she was waiving appeal.

Like the appellate advisals held inadequate in the cases cited above, the IJ's appellate advisal in this case was invalid. Because Ms. Buenrostro's waiver of appeal was based upon an insufficient explanation of her appellate right and an insufficient waiver, she was denied due process.

### ii. The IJ Failed to Advise Ms. Buenrostro of her Eligibility for Cancellation of Removal Pursuant to 8 U.S.C. 1229b.

"The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien --

(1) has been an alien lawfully admitted for permanent residence for not less than 5 years,

(2) has resided in the United States continuously for 7 years after having been admitted in any status, and

(3) has not been convicted of any aggravated felony.

8 U.S.C. § 1229b (2008).

Ms. Buenrostro had been admitted as a lawful permanent resident since 1962, more than 44 years at the time of her removal proceeding in 2006. Further, she had lived in the United States continuously since that time as well. Therefore, Ms. Buenrostro clearly meets the first two requirements.

The immigration service charged that Ms. Buenrostro was deportable because of her 2004 conviction

for transportation of a controlled substance, in violation of California Health and Safety Code 11352. A violation of 11352 is not an aggravated felony, because it is not a drug trafficking offense. The 9th Circuit has unequivocally held that California Health and Safety § 11352 is categorically over broad, requiring the Court to utilize the modified categorical approach. United States v. Crawford, 520 F.3d. 1072 (9th Cir. 2008); United States v. Rivera-Sanchez, 247 F.3d 905 (9th Cir. 2001)(en banc). Here, there was no allegation that Ms. Buenrostro was an aggravated felon, nor was there any evidence of such established at the time of her deportation hearing.

Ms. Buenrostro meets the residency requirements for cancellation of removal. Further her conviction for transportation of narcotics is not an aggravated felony. Therefore, she was eligible for cancellation of removal. Because Ms. Buenrostro was eligible for relief from deportation, was not informed of that relief she did not validly waive her appellate rights at her deportation proceeding.

**b.    Denial of Due Process in Ms. Buenrostro's Deportation Proceeding Prejudiced Her[2]**

Finally, Ms. Buenrostro must show that the proceedings were fundamentally unfair in a way that prejudiced her. As noted above, "[a]n underlying removal order is 'fundamentally unfair' if: (1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" Ubaldo-Figueroa, 364 F.3d at 1048 (quoting Zarate-Martinez, 133 F.3d at 1197). To establish prejudice, Ms. Buenrostro does not have to show that she would have been granted relief. Instead, she need only show that he had a "'plausible' ground for relief from deportation." Id. at 1050 (citing Arrieta, 224 F.3d at 1079). Furthermore, as noted previously, although Ms. Buenrostro carries the initial burden on the issue of prejudice, once she makes a prima facie showing of prejudice, the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceedings' outcome. Gonzalez-Valerio, 342 F.3d at 1054 (emphasis added).

---

As defense counsel receives more information, defense counsel will supplement this motion with further evidence of prejudice.

**1)  Ms. Buenrostro Suffered Prejudice As a Result of the IJ's Misadvisal as to her Appellate Rights**

Ms. Buenrostro's invalid waiver of her appellate right was prejudicial because she could have won relief that she was denied in the immigration proceeding in the first instance. Her prejudice arising out of the denial of each of those is discussed below. Had Ms. Buenrostro been properly informed of her right to appeal, she likely wold not have waived it.

**2)  Ms. Buenrostro Suffered Prejudice As a Result of the IJ's Misadvisal of Her Eligibility for Cancellation of Removal**

To demonstrate prejudice at her removal hearing, Ms. Buenrostro "does not have to show that [s]he actually would have been granted relief. Instead, [s]he must only show that [s]he had a 'plausible' ground for relief from deportation." Ubaldo-Figueroa, 364 F.3d at 1050 (9th Cir. 2004) (internal citation omitted); Arietta, 224 F.3d at 1079.

As discussed above, Ms. Buenrostro meets the residency requirements for cancellation of removal. Her 2004 conviction for transportation of a controlled substance, which was the basis for her deportation, is not an aggravated felony. The fact that Ms. Buenrostro was a lawful permanent resident for more than forty-years, had substantial ties to the United States, virtually no ties to Mexico, and was the parent of a United States citizen child, makes it more than "plausible" that she would have been granted cancellation of removal.

## III.

## CONCLUSION

For the foregoing reasons, Ms. Buenrostro-Villaruel respectfully requests that the Court grant the above motions.

Respectfully submitted,

Dated: May 15, 2008

*s/ Leila W. Morgan*
**LEILA W. MORGAN**
Federal Defenders of San Diego, Inc.
Attorneys for Ms. Buenrostro-Villaruel
Leila_Morgan@fd.org